**Louise PEER, Plaintiff-Appellant,**

v.

**MFA MILLING COMPANY,
Defendant-Respondent.**

No. 10116.

Missouri Court of Appeals,
Southern District,
En Banc.

Feb. 26, 1979.

Charles C. Shafer, Jr., Kansas City, for plaintiff-appellant.

Raymond E. Whiteaker, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendant-respondent.

FLANIGAN, Chief Judge.

Plaintiff Louise Peer is the widow and sole survivor of Paul J. Peer who died December 2, 1971. Plaintiff instituted this action in the Circuit Court of Greene County against defendant MFA Milling Company, her husband's employer. The petition alleged, in part, that the decedent "did suffer injury and/or death" in the course of his employment, that he was exposed to "highly toxic dangerous and poisonous drugs, chemicals, and substances, including the fumes, gases and dust therefrom," and that his death "was a direct and proximate result" of defendant's conduct. Defendant's answer denied those allegations.

The petition pleaded alternative theories of recovery. The theories included failure to provide a safe place to work, failure to provide certain equipment, negligence in failing to conduct certain tests, and certain statutory violations.

The trial court sustained a motion for summary judgment filed by defendant and entered judgment in favor of defendant on all counts of the petition. Plaintiff appeals.

The provisions of Rule 74.04[1] include: "(b) A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969 V.A.M.S.

for a summary judgment in his favor as to all or any part thereof. (c) . . . The adverse party prior to the day of hearing may serve opposing affidavits. Judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law . . . (h) In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

■ In determining whether the trial court erred in entering summary judgment in favor of the defendant this court must view the record in the light most favorable to the plaintiff. *Otto v. Farmers Ins. Co.,* 558 S.W.2d 713, 715[1] (Mo.App.1977); *Seliga Shoe Stores, Inc. v. City of Maplewood,* 558 S.W.2d 328, 331[1] (Mo.App.1977). Summary judgment is a drastic remedy, *Seliga,* supra, 558 S.W.2d at 331. A "genuine issue of fact" exists, precluding the rendition of summary judgment, when there is the "slightest doubt" as to the facts, *Pagan v. City of Kennett,* 427 S.W.2d 251, 252[3] (Mo.App.1968); *Maddock v. Lewis,* 386 S.W.2d 406, 409 (Mo.1965), so long as the fact in doubt is a material one which has "legal probative force as to a controlling issue." *Seliga,* supra, 558 S.W.2d at 331.

As one leading authority has pointed out, "Although a motion for summary judgment . . . may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions." Wright and Miller, Federal Practice and Procedure, Vol. 10, § 2729, p. 559. Our supreme court has evinced a pronounced reluctance to affirm the granting of summary judgment relief to a tort defendant. See, for example, *Blackburn v. Swift,* 457 S.W.2d 805 (Mo.1970); *Cooper v. Finke,* 376 S.W.2d 225 (Mo.1964). However, in the rare situation where the exacting requirements of Rule 74.04 are met, the relief is available in a tort action. Examples of situations where a tort defendant successfully interposed, by resort to summary judgment, the shield of the occupational disease portions of the Missouri Workmen's Compensation Law may be found in *King v. Monsanto Chemical Company,* 256 F.2d 812 (8th Cir. 1958) and *Oggesen v. General Cable Corporation,* 273 F.2d 331 (8th Cir. 1960).

Defendant's motion for summary judgment was based on these grounds: "That decedent, plaintiff, and defendant at all times material herein, came within the provisions of and were subject to the Workmen's Compensation Law," including "the occupational disease amendment"; that paragraphs 3, 4, and 5 of Count I of the petition, if true, showed that "decedent died as a result of an occupational disease" and that plaintiff's sole remedy, "if any," is under the terms and provisions of the Workmen's Compensation Law.[2]

2. The legislative history of the occupational disease portion of the workmen's compensation law may be found by examining two cases, *Marie v. Standard Steel Works,* 319 S.W.2d 871 (Mo. banc 1959), and *Liebrum v. Laclede Gas Company,* 419 S.W.2d 517 (Mo.App.1967). As *Marie* points out, occupational diseases were expressly excluded from the coverage of the original Missouri Workmen's Compensation Act enacted in 1925. Occupational disease coverage was made optional by an amendment of the Act in 1931. Prior to 1959 the Act did not contain a definition of the term "occupational disease" but that term, according to *Marie,* 319 S.W.2d at p. 875, "acquired by judicial construction a well-established meaning in this state," which is there set forth. As *Liebrum* points out, 419 S.W.2d at p. 520, a statutory definition [§ 278.067] was enacted in 1959. At p. 521 of *Liebrum* the court specifies what portions of the statutory definitions of "occupational disease" were included in the term as it was previously defined by judicial opinion.

Section 287.067 reads, in pertinent part:

"1. In this chapter the term 'occupational disease' is hereby defined to mean a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and

"The compensation act, including the occupational disease amendment where applicable, is not supplemental or declaratory of any existing rule, right or remedy, but creates an entirely new right or remedy and where the employer and employee have elected to accept the provisions of the act such new right or remedy is wholly substitutional in character and supplants all other rights and remedies, at common law or otherwise." *Marie v. Standard Steel Works,* 319 S.W.2d 871, 875[3] (Mo. banc 1959). "It has been firmly established that the question as to whether or not the Workmen's Compensation Act, § 287.010, et seq., is applicable to a claim for which recovery is sought in a common law action is an affirmative defense and the burden of establishing same rests upon the defendant." *Roberts v. Epicure Foods Company,* 330 S.W.2d 837, 839[1] (Mo.1960). In *Roberts,* at p. 840, the court pointed out that when a defendant in a tort action relies upon the affirmative defense that the cause is barred by the workmen's compensation act, "[t]hat question is ordinarily a highly contested fact issue to be determined from conflicting oral testimony."

When a tort defendant relies upon this affirmative defense it frequently happens that the supporting evidence adduced by the defendant is of the quality which would aid the employee, and damage the same defendant, if a claim were being made under the compensation act. That fact may explain the vagueness to which both sides have resorted in the case at bar, the plaintiff in her petition and the defendant in its motion and in its brief as respondent here.

The lengthy petition, perhaps by design, lacks clarity. The defendant did not utilize Rule 55.27(d) by moving for a more definite statement. The sufficiency of the petition "to state a claim upon which relief can be granted" was not attacked by the defendant, either in the trial court or, as Rule 55.27(g)(2) permits, in this court.

The brief of plaintiff as appellant here asserts that "a genuine issue of material fact remains ripe for determination. We still have no authoritative determination of what killed Paul J. Peer." Defendant does not challenge the latter statement. Defendant, in its brief, makes no attempt to state what it claims the facts to be nor does defendant accord any factual interpretation to the various items upon which it relied in the trial court to support its motion.

Before examining the propriety of the trial court's ruling, it is necessary to review some of the principles which confront a defendant who seeks to interpose the affirmative defense that a tort claim is barred by the compensation act and that plaintiff must resort to the latter for relief.

In *Harryman v. L & N Buick-Pontiac, Inc.,* 431 S.W.2d 193 (Mo. banc 1968), a plaintiff brought a common law negligence action against his employer and the trial court, in dismissing the action, upheld the defense that plaintiff's remedy was exclusively under the compensation law. In reversing the order of dismissal and remanding the cause for trial, the supreme court rejected the contention that *all* claims for "work-connected injuries" were solely cognizable by the Industrial Commission. The court answered in the negative the following question: "Has the act taken from an employee his right to recover from his employer for an injury *that does not fall within the definitions and provisions of the act?*" *Harryman,* at 195. (Emphasis added.) The court also said at 196: "The obligation to furnish compensation is *only* for injury by such 'accident.' The release is

which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

*only* from liability for an injury by such 'accident.'" (Emphasis in original.)[3]

*Cleveland v. Laclede-Christy Clay Products Co.,* 113 S.W.2d 1065 (Mo.App.1938) furnishes an example of a situation where a tort defendant, relying upon the affirmative defense of the shield of the occupational disease provisions of the compensation law, failed to sustain its evidentiary burden. The court, at 1071, said:

"Defendant's theory that plaintiff's claim was exclusively under the Missouri Workmen's Compensation Act is an affirmative defense, the burden of pleading and proving of which was upon defendant. . . . To sustain such a defense defendant was required to prove not only that it had filed with the Compensation Commission a written notice of election to bring itself within the occupational disease amendment. . . *but it was required to go further and prove that Cleveland's death was caused or was hastened by the conditions under which he worked* after defendant elected to accept the occupational disease amendment. *Defendant offered no evidence whatsoever to show that the disability and death of Cleveland were caused by the conditions under which he worked* after defendant accepted the amendment. Its proof was directed toward showing that he was suffering from a disease not caused by his employment . . . . *If plaintiff had prosecuted a claim under the Compensation Act for the death of her husband on the same evidence for both parties as appears in this record, it is clear that she would not be entitled to receive compensation.* . . . There is no doubt that, where the facts show the Compensation Act, including the occupational disease amendment, to be applicable, the right to compensation is exclusive and takes the place of all other rights and remedies of an employee, either under the common law or under the health and safety statutes involved herein. In other words,

the Compensation Act, when applicable, is not cumulative or supplemental but is wholly substitutional as contended by defendant. *It must be remembered, however, that before the Compensation Act can be substitutional, it must be shown to be applicable,* and we are satisfied that under the evidence in this case it is not applicable for the reason that *defendant* offered no evidence whatsoever *to show a causal connection between the conditions of Cleveland's employment,* after it accepted the occupational disease amendment, *and Cleveland's death.*" (Emphasis added.)

*Cleveland* is an illustration of the fact that when a tort defendant relies upon the affirmative defense under consideration, the evidence he adduces in support of that defense would be detrimental to him if a workmen's compensation claim was being prosecuted against him for the same injuries.

In *Sheen v. DiBella,* 395 S.W.2d 296 (Mo. App.1965) the court discussed § 287.120 which provides, in pertinent part: "'If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.'"

The foregoing language, said the court at p. 298, means that when the employer-employee relationship exists and the accident arises out of and in the course of the employment, the workmen's compensation act applies and is the exclusive remedy. "In such a situation the common law action for damages, based upon negligence, will not lie. *Conversely, if for any valid reason, the accident is not covered by the Act, then the common law action, if negligence can be*

**3.** In *Staples v. A. P. Green Fire Brick Company,* 307 S.W.2d 457, 462 (Mo. banc 1957) the court said: "We hold, therefore, that in so far as it concerns deaths from occupational disease the term 'accident' must be construed as including a compensable disability resulting from occupational disease and causing death. The ruling announced might be equally applicable to 'accident' as applied to compensable disability from occupational disease, without death, but such a ruling is outside the scope of the issues actually before us."

*shown, remains unaffected by the Compensation Act and available as a remedy for the injured person.*" That language is quoted with approval in *Wilson v. Hungate,* 434 S.W.2d 580, 582 (Mo.1968).

An example of the operation of the foregoing principle, with respect to the occupational disease portion of the compensation law, may be found in *Cleveland,* supra. Another example may be found in *Smith v. Harbison-Walker Refractories Co.,* 340 Mo. 389, 100 S.W.2d 909 (1936). That case involved an action for damages based upon defendant's alleged failure to comply with certain statutes, including what is now § 292.120. The claim of plaintiff was that by reason of defendant's statutory violation he was caused to inhale dust and contracted silicosis.

Section 292.120 provides: "Every person, firm or corporation using any polishing wheel or machine of any character which generates dust . . . in its operation, shall provide each and every such wheel or machine with a hood, which shall be connected with a blower or suction fan of sufficient power to carry off said dust . · . and prevent its inhalation by those employed about said wheel or machine."

The court pointed out, at p. 917, that "poisonous and disease-producing dusts are treated by [§§ 292.300–292.440], and further requirements are made by them to prevent harm to employees from such dusts." The court said, however, with respect to § 292.-120, "There is nothing in this section to limit its application to disease producing dusts . . . While, of course, defendant would not be liable to plaintiff for damages unless the dust caused him injury, *to recover under [§ 292.120] it was not necessary to prove that the injury caused was an occupational disease.* (For example, even if plaintiff had tuberculosis in an arrested stage, defendant would be liable if the dust, whether it contained silica or not, reactivated or aggravated this disease.)" (Emphasis added.)

■ The instant petition does not cite § 292.120. If, however, it pleads facts which bring the case within the purview of the statute, citation of the statute in the petition is not a condition precedent to plaintiff's entitlement to the relief afforded thereby. *Williamson's Estate v. Williamson,* 380 S.W.2d 333, 338[7] (Mo.1964); *Jones v. Chicago B & Q R Co.,* 343 Mo. 1104, 125 S.W.2d 5, 12[4] (1938). An examination of the lengthy petition discloses that it cannot properly be said that, as a matter of law, its allegations fall short of pleading facts constituting a violation of § 292.120 and resultant "injury and/or death," the latter being the inept but unattacked wording of the petition.

■ In support of its motion for summary judgment defendant, in the motion, placed its reliance upon certain items. This court holds that the items fail to show "that there is no genuine issue as to any material fact" and also fail to show that [defendant] "is entitled to a judgment as a matter of law." Rule 74.04(c).

Several of the items upon which defendant relied were directed solely to showing the existence of an employment relationship between the decedent and defendant, the election of defendant to come under the workmen's compensation act (including the occupational disease portion thereof) and the fact that the decedent did not take any step to reject the coverage of the act. Neither party seriously disputes these matters and, for the purpose of this opinion, they are assumed.

The other items upon which defendant relied are the following:

1. Paragraphs 3, 4 and 5 of Count I of the petition. The contents of those paragraphs were incorporated in the other two counts.

2. The deposition of plaintiff Louise Peer.

3. A copy of a claim for workmen's compensation filed by plaintiff.

4. The answer of defendant to the claim for workmen's compensation.

Examination of item 1, three paragraphs [4] of the petition gingerly selected by defendant, will disclose that none of those paragraphs contains any allegation with respect to decedent's contracting any specific ailment by reason of the described activities. It is manifest that item 1, standing alone, falls short of meeting the requirements of § 287.067 defining "occupational disease." If a disease is simply not identified, it cannot be determined whether it measures up to the statutory standards.

It is true that the petition has other portions, upon which defendant carefully avoided placing specific reliance, which mentioned, in generalities, certain ailments which the decedent allegedly incurred by reason of his exposure to the conditions described in item 1. However, those allegations (which were denied in defendant's answer, as were the allegations of item 1) need not be particularized because issues of material fact are generated by item 2, the deposition of plaintiff Louise Peer.

Although portions of that deposition constitute hearsay, the deposition was taken by defendant's counsel, all of the information contained in it was elicited by him and defendant's motion places specific reliance upon its contents.

The 65-page deposition is replete with testimony concerning the activities of the decedent in farming and milling operations prior to the inception of his employment by defendant. Those activities involved his exposure to various substances, poisonous and otherwise, including some of those mentioned in item 1. It cannot be said, on the instant record, that as a matter of law this evidence does not create a genuine issue of fact on whether or not decedent's ailment (or ailments), *whatever it was,* appears "to have had its origin in a risk connected with the employment." § 287.067, set forth in *footnote 2.*

Additionally the deposition contains a very complicated medical history of the decedent, commencing years prior to his employment with the defendant and continuing until his death in 1971, over three years after the inception of that employment.

Some of the physicians who treated the decedent did not "know what [decedent's ailment] was or what caused it." Although a few of the physicians did offer diagnoses, they were in conflict with diagnoses offered by other physicians. Decedent's death certificate showed the cause of death to be an ailment other than those specifically mentioned in the petition.

The factual uncertainties generated by item 2 are not devitalized by item 3, the claim for compensation, or item 4, defendant's answer to the claim for compensation.

4. Those paragraphs read:

"3. Decedent was employed by the defendant in 1967 and thereafter performed a variety of duties for the defendant in the course of his employment. Among many other duties, he was required to constantly check the quality and uniformity of pellets produced by the defendant. This particular duty required him to personally handle literally millions of pellets and exposed him to a variety of dangerous chemicals, drugs, poisons and other substances and to the fumes, gases and dust from such perilous materials.

"4. As a part of his regular work assignment, decedent was required by the defendant to come into close, immediate and constant contact with, and to breathe the fumes, gases and dust from a great variety of dangerous chemicals, drugs and other substances used in defendant's work process and in the manufacturing of various of the defendant's products. The chemicals, drugs and other substances include, among other things, the following:

"Calcium carbonate, Di calsium phosphate, Cobalt carbonate, Cupperic oxide, Ferric oxide, Mannesium oxide, Manganese oxide, Zinc oxide, Sodium chloride, Iodine compounds, Ethylene diamine, Dihydro iodide, Arsenical acid, Niacin Streptomycin, Neomtcin and Piperozzinedihychloride.

"5. Defendant required the decedent to work in its two plants without protective clothing or face masks and without taking any precautions to prevent decedent from touching, breathing, coming in contact with or otherwise having to work with dangerous materials in highly polluted areas. Defendant knew or should have known that the various milling devices, hoppers, feeders, pressure lines, other machinery and equipment used in its plants were so grossly unprotected that anyone working therein or thereabout would be exposed to the dangerous, harmful and deadly substances used by defendant."

Defendant does not specifically refer to any of the contents of item 3. Those contents, at least to some extent, are inconsistent with portions of item 2. Those inconsistencies do not quench the flame of factual uncertainty but serve instead to feed it.

In item 4 defendant denied the allegations of item 3. Authority exists that the denials contained in item 4 are "a factor to be weighed in determining whether there are material facts in dispute in the summary judgment proceeding." *Becke v. Fred A. Smith Lumber Co., Inc.,* 9 Ill.App.3d 563, 292 N.E.2d 572, 576[9] (1973).

Until the factual uncertainties have been resolved the validity of defendant's affirmative defense remains an open question. This court holds that the items relied upon by defendant do not constitute a showing "by unassailable proof" that defendant was entitled to judgment "as a matter of law." Rule 74.04(h).

The judgment is reversed and the cause remanded.

HOGAN, TITUS, BILLINGS and MAUS, JJ., concur.