**Shirley Sue CASTERLINE,**
**Plaintiff-Appellant,**

**v.**

**Dr. Lawrence G. STUERMAN, Charlotte Wetzel Wood, Dorothy Windmiller Payne, Vickie Elaine Bruch, D. Rule Campbell, Carol Petrie Campbell, Carol Calvin, Helen Fisher, Dr. Eugene Bricker, William Naxera, Sr., Adele Kooreman, Shirley Butters, George Nienhueser, Defendants-Respondents.**

No. 39897.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 28, 1979.

Henry Gerhardt, St. Charles, for plaintiff-appellant.

James G. Rittenbaum, Louisiana, Carr L. Woods, Bowling Green, Edward A. Glenn, Louisiana, Paul E. Williams, Bowling Green, Gerre S. Langton, St. Louis, for defendants-respondents.

STEPHAN, Presiding Judge.

Plaintiff appeals from the trial court's order granting defendants' motions for summary judgment. We review the record in the light most favorable to the party against whom the trial court entered summary judgment, *Peer v. MFA Milling Co.*, 578 S.W.2d 291, 292[1] (Mo.App.1979), and reverse and remand.

The first amended petition alleged that plaintiff had been employed as the Director of Nurses of the Pike County Memorial Hospital since May 1974, and had been appointed as the Assistant Administrator of Smith-Barr Manor Nursing Home, which was to be opened and operated by the Pike County Memorial Hospital; that her contract of employment with the hospital administration was oral; and that she was dismissed from her employment on or about January 23, 1976, as a result of the concerted activities of the thirteen defendants. Other pertinent allegations are set out in the margin.[1] The petition concluded with a prayer for $50,000 actual and $150,000 punitive damages.

After filing a variety of motions to make more definite and certain, to strike, and to dismiss, all defendants eventually filed motions for summary judgment supported by an affidavit of Pike County Clerk James R. Baker to the effect that the Pike County Memorial Hospital is wholly owned and operated by Pike County. The affidavit was not controverted by plaintiff; and, as indicated, the motions for summary judgment were granted. The trial court gave no reasons for its actions other than finding "no genuine issue as to any material fact." However, we discern from the transcript

---

1. "5. That the Defendants knew of the contractual rights and relationship and expectancy of the Plaintiff, Shirley Sue Casterline with her employer, the Pike County Memorial Hospital.

6. That the Defendants wrongfully, maliciously, viciously, unlawfully and with the intent to harass, annoy, persecute and injure the Plaintiff, Shirley Sue Casterline, persuaded and procured the Board of Trustees of the Pike County Memorial Hospital to dismiss and terminate the Plaintiff from her position of employment, and pursuit of her livelihood with said Hospital.

7. That the Defendants by their conduct and language sought to create a prejudice or feeling against the Plaintiff, and said Defendants in a concerted action, assembled information in such a way, made vague general accusations, misstatements of existing facts, used false, malicious and fraudulent representations to procure the discharge and termination of Plaintiff, some of which were to the general tenor and effect that Plaintiff was responsible for alleged hospital employee job insecurity, lack of communication, long hours of work, shortage of nursing personnel and decline in quality of patient care, that the activities of Plaintiff allegedly led to less cooperation among hospital employees and said Defendants in concert unlawfully threatened a hospital employee's walkout unless the Plaintiff, Shirley Sue Casterline, was removed or terminated from her position of employment with the Pike County Memorial Hospital.

8. That the Defendants' conduct and representations were without justification or excuse and that said Defendants' actions, language and threats were unlawful and expressly interfered with the contractual rights, relationship and expectations of Plaintiff, Shirley Sue Casterline, with her employer The Pike County Memorial Hospital.

\*　\*　\*　\*　\*　\*

10. That the Plaintiff, Shirley Sue Casterline, was dismissed and terminated from her employment with the Pike County Memorial Hospital on or about January 23, 1976.

11. That the said conduct and language and threats of the Defendants has deprived the Plaintiff, Shirley Sue Casterline, of her means of livelihood, exposed her to public contempt and ridicule, deprived her of her professional status in hospital administration, deprived her of income and earnings, and will continue to deprive her of said income and earnings in the future, and that the actions and representations and threats of the Defendants and resulting termination have humiliated the Plaintiff, injured her reputation, and has caused her to endure great mental suffering and to incur other resulting expenses and costs by reason of her termination of employment, including the relocation of her home and residence."

and the briefs that defendants' principal position below as well as in this court is that, because plaintiff's contract of employment with the hospital was not in writing, she may not maintain this action. Their primary authority for this argument is § 432.070, RSMo 1969, which reads:

"No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

From the foregoing, defendants argue that counties may contract only in writing; plaintiff did not have a written contract; therefore, plaintiff did not have a contract the breach of which they could induce. We are not persuaded by this reasoning for the petition also alleges that defendants wrongfully interfered with plaintiff's "relationship and expectations" with her employer.

▪ Assuming that the Pike County Hospital, as an instrumentality of the county, is subject to the strictures of § 432.070, supra, cf. *Fulton National Bank v. Callaway Memorial Hospital*, 465 S.W.2d 549, 551 (Mo. 1971), we hold that the defendants, sued in their private, individual capacities can take no benefit from it. The purpose of the statute is to protect the county. *Miller v. City of St. Joseph*, 485 S.W.2d 688, 692[3] (Mo.App.1972); *State ex rel. Walton v. Miller*, 297 S.W.2d 611, 614 (Mo.App.1956). It was not designed to insulate individuals from liability for their tortious acts.

▪ It is undisputed that, as between plaintiff and the hospital, there existed an employment relationship of indefinite duration which had existed for a fairly substantial period of time prior to her dismissal. Whether this relationship is or is not termed a "contract" cannot logically affect plaintiff's right to protect it or seek redress for unjustified interference with it. In an often cited case involving interference with business and contractual relationships, our Supreme Court said:

"The right of recovery for inducing a breach of a contract is but one instance of the protection which the law affords against unjustified interference in business relations. An existing contract may be a basis for greater protection, but some protection is appropriate against unjustified interference with reasonable expectancies of commercial relations even where an existing contract is lacking. The unjustifiable character of the alleged wrongdoer's conduct and the harm caused thereby may be equally clear in both instances, but the differentiation between them relates to the scope of the privileges, or the kind and amount of interference that is justifiable in view of the differences in the facts."

*Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 980 (1953). See also *Harber v. Ohio National Life Insurance Co.*, 390 F.Supp. 678, 683 (E.D.Mo. 1974), aff'd 512 F.2d 170 (8th Cir. 1975), in which the court recognized the existence of a cause of action for interference with "a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy"; and the factually similar case of *Owen v. Williams*, 322 Mass. 356, 77 N.E.2d 318 (1948). In *Owen*, a nurse successfully prosecuted an action for damages against a physician who maliciously "procured" her dismissal by hospital authorities from a case on which she was working as a special nurse and prevented her further employment. At page 322, the court said:

"And in order to maintain the action it was not necessary that the plaintiff prove that she had a binding contract with the hospital. It is well settled that an existing or even a probable future business relationship from which there is a reasonable expectancy of financial benefit is enough."

In view of the foregoing, we hold that the lack of a formal, written contract between plaintiff and the hospital did not warrant the granting of the motions for summary judgment.

Reversed and remanded.

SATZ and STEWART, JJ., concur.