**Ann EIB, nee: Conner, Appellant,**

v.

**FEDERAL RESERVE BANK OF KANSAS CITY, et al., Respondents.**

**No. WD 32208.**

Missouri Court of Appeals,
Western District.

March 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Daniel J. Devine and Robert K. Ball, II, Kansas City, for appellant.

John C. Dods and Gary R. Long, Kansas City, for respondents; Shook, Hardy & Bacon, Kansas City, of counsel.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

PRITCHARD, Judge.

In Count I of her petition appellant claimed damages against the Federal Reserve Bank of Kansas City for its alleged failure to state the true reason for her termination (on August 12, 1977), under the service letter statute, § 290.140, RSMo. 1969. Count II of her claim was against individual defendants, Donald A. Slover, alleged to be vice president of Federal Reserve, and Enis Alldredge, alleged to be its assistant vice president. It was pleaded in Count II that appellant, before August 12, 1977, was in a contractual relationship with Federal Reserve and was legally entitled to and was receiving benefits in the form of salary, hospitalization insurance, retirement, and savings, with an expectation of advancement and promotion; that Slover and Alldredge, unlawfully and without justification, agreed and conspired to and did cause appellant's employment to be terminated solely and only by reason of their Federal Reserve executive positions, in these (here paraphrased) respects: (A) they caused the termination for purported viola-tion of a regulation of Federal Reserve, when appellant was not in violation of any such regulation; (B) they caused the violation in such manner that appellant was coerced, intimidated and prohibited from availing herself of benefits of Federal Reserve's employee grievance procedure; and (C) she was discriminated against in regard to the reason given for her termination (engagement to be married to another Federal Reserve employee) in that other such employees are engaged and married without any reprisal, termination, or other loss of job or status. The trial court granted respondents' motion for summary judgment and entered judgment on both counts against appellant.

In response to appellant's request, Federal Reserve, on February 28, 1978, issued its service letter to her signed by respondent Alldredge. In pertinent parts, the letter informed: "You were employed from May 7, 1975, until August 12, 1977, as an elevator operator. You were employed under the name of Audrey Ann Conner. Your employment was terminated because of your engagement and pending marriage to your supervisor. The bank has a policy which prohibits relatives or prospective relatives of supervisors from being employed by the bank. Your work performance was rated as satisfactory while you were employed by the bank." Under Point I, appellant contends that the summary judgment was erroneously entered because Federal Reserve does not have a policy prohibiting continued employment by two employees engaged to each other and she could not have been terminated in accordance with a nonexistent policy, and thus the reason stated in the service letter was false.

The service letter statute, § 290.140, RSMo.1978, requires that upon request of an employee who has been discharged or has voluntarily quit shall be issued "a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; * *."

Depositions were presented in support of Federal Reserve's motion for summary judgment. Appellant had been dating Jim Eib for about eight months prior to her termination, and that relationship was causing problems in her department. She was aware that it provoked gossip among her co-workers who believed that she was getting special treatment because she was dating the supervisor. Appellant admitted that she knew it was the bank's policy not to have married couples within the same department, and that she was told specifically that the reason for her termination was the impending marriage, and she did not know of any other reason why she would be terminated. According to Alldredge, he knew that there was friction in appellant's department and he tried to transfer her to another, and on being unable to do that, he and Slover decided to terminate her.

Under this posture of the case, the question is whether the foregoing facts show that there is a material question of fact yet to be determined in the face of the motion for summary judgment. This, in turn, requires a consideration of whether the facts show as a matter of law, that the reasons given in the service letter to appellant were not false.

Federal Reserve's Rule 13 deals with its personnel and payroll policies. Paraphrased, and as pertinent, it provides that when two employees marry, each may continue employment providing they are in different departments and there appears to be no security risk or conflict of interest; if they are in the same department an appropriate transfer will be made, but if it cannot be made, one or the other shall resign in two months.

In *Terranova v. Western Auto*, 589 S.W.2d 362 (Mo.App.1979), plaintiff made a similar allegation as was done in this case— that a stated reason for discharge was false. The letter stated that the discharge was caused by apparent irregularities in cash payout slips to customers and customers' denials of receipt of the full amount shown. Plaintiff claimed that the reason given was

an accusation that she stole, and her denial thereof showed that the reason was false. The court said, page 363[1, 2], "The issue before the jury was not whether Dorothy had stolen any money but was whether the company had stated the true cause of her dismissal in its letter. Dorothy had the burden of proving the negative, i.e. that the reason stated in the letter was not the true reason she was dismissed. *Potter v. Milbank Manufacturing Company*, 489 S.W.2d 197, 203[1] (Mo.1972)." See also *Newman v. Greater Kansas City Baptist and Community Hospital Association*, 604 S.W.2d 619, 622[3] (Mo.App.1980), where the court reversed a judgment for plaintiff for lack of a submissible case, the court saying, "The burden of proof *Potter* describes for a plaintiff, nevertheless, is to prove that the reason stated for the discharge was not true, but ulterior. * * * In fact, the evidence allows *no* inference other than that she was terminated because—without pretext, guile or ulterior motive—the hospital believed she stole. There was no proof that the reason given was a foil for a true but undisclosed cause.". Contrast *Dwyer v. Busch Properties, Inc.*, 624 S.W.2d 848 (Mo. banc 1981) [handed down December 14, 1981], where there *was evidence* that the employee's dismissal was possibly the result of a desire to cut overhead; planned abandonment of the project; or no further need of the employee's services, which created a jury question as to whether the service letter statement, loss of confidence in the employee's ability to discharge his responsibilities, was the true reason for his discharge.

■ Here, appellant confuses the *validity* of a stated reason with whether it was *a true reason*. It matters not whether Federal Reserve's employee policies extended to those who became engaged to be married. It is not shown that that given reason was false, ulterior or pretextual. In that connection, appellant sought leave to file an amended petition as to Count I, setting up, as she says, facts showing that the reasons given in the service letter were false. The proffered amendment merely set up reasons that Federal Reserve's reasons were *invalid*

in that her termination and pending marriage to her supervisor constitutes sex discrimination, and that there was in truth and fact no policy of the bank prohibiting relatives or prospective relatives of supervisors from being employed by it. The proffered amendment sets up no further factual basis that the service letter reasons were false, and under the uncontroverted facts presented in support of the motion for summary judgment, the trial court did not err in entering it as to Count I, nor in not granting leave for the amendment. The constitutionality of § 290.140, here challenged by respondents, has recently been reaffirmed in *Hanch v. K.F.C. National Management Corporation*, 615 S.W.2d 28 (Mo. banc 1981), and that matter need not be here considered.

■ Count II stands upon different considerations than Count I in that there are sufficient factual allegations and controverted facts in opposition to the motion for summary judgment to demonstrate that there are genuine issues of fact to be determined. In paragraph 2 of Count II (which is against individual defendants Slover and Alldredge), it is alleged that appellant was employed by Federal Reserve prior to August 12, 1977, and was legally entitled to and was receiving benefits from that relationship in the form of salary, hospitalization insurance, retirement, savings, with an expectation of advancement and promotion. The individual defendants admitted these allegations except that appellant was legally entitled to retirement plans and an expectation of advancement and promotion. Appellant further pleaded: Slover and Alldredge unlawfully and without justification agreed and conspired to and did cause her employment to be terminated solely and only by reason of their executive positions; that they caused the termination because of appellant's purported violation of Federal Reserve's regulations when, in truth and fact, she was in no such violation; that they caused her termination in such manner that she was coerced, intimidated and prohibited from availing herself of any rights and privileges to apply for and receive benefits of Federal Reserve grievance procedures

for employees; and that she was discriminated against for the reasons given and in that other employees are engaged and married without any reprisal, termination, or other loss of job or status.

■ The action under Count II is denominated as one for interference with a contractual relationship, and the allegations thereunder fall within the elements of that type of action set forth in *Williams v. Irwin-Willert Co.*, 604 S.W.2d 640, 643 (Mo. App.1980), quoting from *Harber v. Ohio National Life Insurance Company*, 390 F.Supp. 678 (E.D.Mo.1974), " '(1) existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the absence of justification; and (5) and [sic] resultant damage to the party whose relationship or expectancy has been disrupted. [Footnote omitted.]' " This is not, as respondents contend, an action for wrongful discharge, for an employee cannot maintain that action absent an employment contract for a definite term or contrary statutory provision, in which event the employer may discharge an employee at any time. *Howe v. St. Louis Union Trust Company*, 392 S.W.2d 625, 627[1, 2] (Mo.1965). Besides, *Armano v. Federal Reserve Bank of Boston*, 468 F.Supp. 674 (D.C.Mass.1979), construed 12 U.S.C. § 341, and held that the bank was precluded from entering into an employment contract which restricts its power to terminate its employees at its pleasure. Here, appellant does not plead the existence of an express contract, but merely that there was an employment relationship with Federal Reserve with an expectation of advancement and promotion.

*Casterline v. Stuerman*, 588 S.W.2d 86 (Mo.App.1979), held that in an action for interference with a contractual relationship, it is not necessary that there be a binding contract in existence, but a probable future business relationship from which there is a

reasonable expectancy of financial benefits is enough. That case upheld the plaintiff's right to sue other employees of a hospital, who had threatened a walk-out in an effort to coerce the hospital into dismissing plaintiff, "in their private, individual capacities."

Slover and Alldredge say that appellant's Count II action must be brought against "third parties" who are not parties to the contract or relationship in question. In this connection, they argue also that they are corporate officers, that the actions of corporate officers are the actions of the corporation and appellant's dismissal was thus the action of the corporation. The *Casterline* case, supra, rules the question of whether a plaintiff may sue co-employees alleged to be guilty of wrongful acts occasioning a dismissal from employment, and neither *Downey v. United Weatherproofing, Inc.*, 253 S.W.2d 976 (1953), nor *Carter v. Oster*, 134 Mo.App. 146, 112 S.W. 995 (1908), cited by respondents, say that the third party may not be an employee of the same company. Although Federal Reserve may discharge an employee at its pleasure under 12 U.S.C. § 341, the question in this case is whether Slover and Alldredge, as individuals, were guilty of bad faith, in, as appellant factually alleges, they caused her termination because of her purported violation of Federal Reserve's employee regulations when she was in no such violation; that they coerced, intimidated and prohibited her from availing herself of employee grievance procedures; and she was discriminated against in that other employees are engaged and married without reprisal, termination or other loss of job or status. A judgment on the pleadings as to Count II of the Armano case, supra, was overruled, where plaintiff pleaded facts raising a jury question of outrageous conduct which led to his termination. The privilege of Slover and Alldredge in the matter of the dismissal of appellant may have been lost, depending upon her proof, if there existed improper means or bad faith. See *Owen v. Williams*, 322 Mass. 356, 77 N.E.2d 318, 321 (1948), and compare *Nola v. Merollis Chevrolet Kansas City, Inc.*, 537 S.W.2d 627, 634 (Mo.App.1976), noting that a stockholder or an officer in a corporation is privileged to induce it to breach a contract, provided no *improper means* are used, the defendant acts in good faith to protect the corporation and does not act for his own personal benefit. Nola did not prove improper means or bad faith, and the evidence showed only a good faith exercise of business judgment; hence direction of the verdict against him was held to be no error. See also *Calhoun v. Falstaff Brewing Corp.*, 478 F.Supp. 357 (E.D.Mo.1979), where quoting Nola, the court denied the motion of Kalmanonitz for summary judgment on one count of a petition against him alleging his tortious interference with a contract between plaintiff, an employee, and Falstaff, in that Kalmononitz was acting in bad faith, for his own benefit, without justifiable cause and in furtherance of no corporate purpose. The court held a cause of action was stated under the theory espoused in the Nola case. Appellant's case here falls within the tort of interference with a noncontractual employment relationship, set forth in 45 Am. Jur.2d, Interference, §§ 49, 50, pp. 321, 322; and *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093 (C.A. 9th, 1981), cited by respondents, had no such claim in it, and thus is not in point. Genuine issues of fact remain to be determined on appellant's factual allegations, which were not determined against her on any matter presented in support of the motion for summary judgment as to Count II, which appellant may amend by leave of court upon remand, if she desires.

The judgment on Count I is affirmed. The judgment on Count II is reversed and the case is remanded for further proceedings thereon.

All concur.