**SISTERS OF ST. MARY, Plaintiff–Counterclaim Defendant–Respondent,**

v.

**John D. BLAIR, Defendant–Counterclaim Plaintiff–Appellant.**

No. 54507.

Missouri Court of Appeals, Eastern District, Division Four.

March 14, 1989.

Mary Anne Olwell Sedey, Patricia Louise Cohen, St. Louis, for defendant-counterclaim plaintiff-appellant.

Gerald M. Richardson, St. Louis, for plaintiff-counterclaim defendant-respondent.

STEPHAN, Judge.

John D. Blair appeals the trial court's action in directing a verdict against him after the jury failed to reach a verdict on the count alleging tortious interference

with contract in his four count counterclaim against respondent Sisters of St. Mary (SSM). The jury returned a verdict against appellant and in favor of SSM on his claim for intentional infliction of emotional distress. The other two counts of his counterclaim had been disposed of previously. Appellant challenges only the trial court's action in directing a verdict against him on his claim for tortious interference with contract. We affirm.

■ To review a directed verdict for a defendant, we view the evidence and inferences in the light favorable to plaintiff and disregard all contrary evidence and inferences. *Fly v. Royal Auto Repair*, 747 S.W.2d 237, 238[1] (Mo.App.1988). If, however, reasonable grounds support the directed verdict, we affirm. *Id.*

The dispositive issue presented on appeal is whether appellant presented sufficient evidence to make a submissible case in an action by an at-will employee against his former employer for tortious interference with contract.

Dr. Blair, an academic and pediatric pathologist, was recruited for the position of director of clinical laboratories and chief pathologist by SSM operating as Cardinal Glennon Hospital ("Hospital"). Appellant conditioned his acceptance on his also obtaining a full-time faculty position at St. Louis University's School of Medicine ("SLU"). SLU and SSM entered into a contract providing that appellant be hired as a full-time faculty member at SLU but that his primary duties be performed at the Hospital. Appellant was not a party to the pathological services contract between SLU and SSM. He was, however, aware of its provisions. He testified that he signed the agreement and "accepted" it. The contract provided for SLU to furnish Hospital pathological services and a director of pathology, specifically appellant. The contract was for a one year term, terminable by either party (SLU or SSM) upon ninety days' notice. The contract provided for renewal and amendment by mutual agreement. Appellant began his duties September 1, 1974, as an employee of SSM. That appellant was an at-will employee of SSM

is not in dispute here, having been resolved by earlier litigation. *See Sisters of St. Mary v. Blair*, 730 S.W.2d 614, 616 (Mo. App.1987).

On December 19, 1980, SSM notified SLU of its intent to terminate the contract, effective March 19, 1981, resulting in appellant's removal from his position at Hospital. SLU sent appellant a copy of the termination letter received from SSM. After appellant's removal, SSM entered into another pathological services contract with SLU designating a new director of pathological laboratories at the Hospital to replace appellant. SLU reassigned appellant first to City Hospital and then, in 1985, to SLU's hospital. SLU reduced appellant's salary by eighteen percent following the termination of his services to SSM.

Based on the foregoing evidence, appellant argues that SSM's conduct resulted in intentional interference of appellant's relationship with SLU. The conduct providing the alleged basis for appellant's claim of tortious interference with contract was SSM's termination of appellant's appointment as the director of its department of clinical laboratory and anatomic pathology. Appellant claims SSM's actions completely prevented him from practicing pediatric pathology and caused him to suffer a salary cutback in his position at SLU. The essence of appellant's complaint is that SSM's exercise of its right to terminate his at-will employment with SSM tortiously interfered with his employment with SLU.

The recent case of *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 882 (Mo.App.1988), sets out the elements necessary to establish an intentional interference with contract:

(1) A contract or a valid business relationship or expectancy;

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of contract relationship;

(4) Absence of justification; and

(5) Damages resulting from defendant's conduct.

Appellant contends Missouri appellate courts recognize a cause of action for tortious interference with a terminable at-will employment relationship. The cases cited by appellant in support of his position include: *Boyer v. Independence Manor Care Center, Inc.*, 721 S.W.2d 246 (Mo. App.1986); *Eib v. Federal Reserve Bank*, 633 S.W.2d 432 (Mo.App.1982); *Stanfield v. National Electrical Contractors Association*, 588 S.W.2d 199 (Mo.App.1979); and *Casterline v. Stuerman*, 588 S.W.2d 86 (Mo.App.1979).

Appellant's reliance on these cases is misdirected. None of these decisions is authority for permitting an at-will employee to recover damages against an *employer solely* because the employer had exercised its legal right to terminate the employment of the at-will employee. Only *Boyer* involved the situation where plaintiff sued an *employer* for tortious interference with an at-will employment; *Eib, Stanfield,* and *Casterline* involved situations where plaintiffs sued persons other than a former employer.

*Boyer,* however, is also distinguishable. Independence Manor Care Center, Inc., a nursing home, employed Dr. Boyer, an at-will employee, as its medical director. Independently of his relationship with the nursing home, Dr. Boyer also maintained an employment-at-will relationship with many of the nursing home residents in his capacity as their personal physician. After the nursing home terminated Dr. Boyer's position as their medical director all his patients changed physicians. Although Dr. Boyer had sued his former employer, similar to Dr. Blair's actions here, the crux of his tortious interference claim concerned the additional allegations that the nursing home management had actively and intentionally interfered with his physician-patient relationship in causing residents of the home to change from him as their

personal physician to another doctor, and not merely the nursing home's lawful exercise of its right to terminate him as its medical director. The appellate court determined that these additional allegations presented a genuine material fact issue and prompted its reversal of the summary judgment granted by the circuit court.

Accepting appellant's vigorous assertion that his petition asserts a claim for tortious interference, and not wrongful discharge, we believe that appellant's proof fails on the fourth element, lack of justification. We need not address SSM's response that appellant's tortious interference claim merely masks a wrongful discharge theory of liability.[1]

■ Under Missouri law, a plaintiff has the burden of producing substantial evidence to establish the absence of justification. *Anderson v. Bourbeuse View, Inc.*, 726 S.W.2d 873, 875 (Mo.App.1987). In *Anderson* we echoed *Friedman v. Edward L. Bakewell, Inc.*, 654 S.W.2d 367, 369–70[4] (Mo.App.1983), in holding that one may be justified in interfering with a contract via a legal right to do so. *Anderson*, 726 S.W.2d at 876.

■ The total dearth of evidence that any of SSM's actions were inherently wrongful compels our conclusion that appellant did not make a submissible case.

Appellant concedes that SSM had an unqualified right to terminate his employment, but then insists SSM's exercise of that right renders SSM liable because its conduct damaged appellant's economic or contractual relationship with SLU. The inconsistency of appellant's argument is evident. Liability does not attach to an "unqualified right"; rights restricted by the possibility of liability are qualified, not unqualified, rights. Once it has been established that SSM had a legal right to terminate appellant's services to them, appel-

---

**1.** If appellant's action were one for wrongful discharge, the directed verdict against appellant would clearly have been proper because the employment-at-will rule bars a cause of action for wrongful discharge. "[I]n the absence of a contract for employment for a definite term or a contrary statutory provision, an employer

may discharge an employee at any time, without cause or reason, or for any reason and in such cases no action can be obtained for wrongful discharge." *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc), *cert. denied* 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981).

lant's cause of action for tortious interference with contract fails. *See Anderson,* 726 S.W.2d at 876.

The facts disclose a simple scenario enabling us to render our decision. SSM possessed an absolute legal right to terminate its agreement with SLU resulting in appellant's removal from Hospital. Any diminution by SLU of appellant's duties and salary with the medical school was merely a secondary effect of SSM's exercise of its unqualified contractual right set out in the contract with SLU, which cannot serve as a predicate of any liability of SSM to appellant.

The judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.