COMMUNITY TITLE COMPANY and Chicago Title Company of St. Louis, n/k/a Century Title & Guaranty Co., Plaintiffs – Appellants – Cross – Respondents,

v.

ROOSEVELT FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant–Respondent–Cross–Appellant.

No. 72315.

Supreme Court of Missouri, En Banc.

Sept. 11, 1990.

Alan E. Popkin, Stanley J. Goodkin, St. Louis, for plaintiffs-appellants-cross-respondents.

Gregory F. Hoffman, James E. Robertson, St. Louis, for defendant-respondent-cross-appellant.

HOLSTEIN, Judge.

Plaintiffs Community Title Company (Community) and Chicago Title Company, now known as Century Title and Guaranty Company, (Chicago) appeal from an order granting a new trial to defendant, Roosevelt Federal Savings and Loan Association (Roosevelt). Plaintiffs sued defendant seeking money damages for tortious interference with a business relationship.[1] Following a jury verdict for the plaintiffs, defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The trial court found the verdict to be against the weight of the evidence and ordered a new trial. Community appealed to the Missouri Court of Appeals, Eastern District. Following opinion, this Court granted transfer. Rule 83.03. Roosevelt filed a cross appeal. Among Roosevelt's responses to the appeal was an assertion that the trial court should have granted a judgment notwithstanding the verdict. A review of the record discloses the plaintiffs failed to prove a cause of action for tortious interference with a contract or business expectancy. The order granting new trial is reversed and the cause remanded for entry of a judgment for defendant notwithstanding the verdict.

The trial court's order granting new trial removed any adverse judgment that might have aggrieved Roosevelt. The cross appeal must be dismissed. § 512.020, RSMo 1986; *Robbins v. Jewish Hospital of St. Louis*, 663 S.W.2d 341, 344 (Mo.App. 1983).

Even so, Roosevelt has consistently contested the submissibility of plaintiffs' cases in post trial motions and in its responding brief on appeal. The appeal by plaintiffs of the order granting a new trial is clearly authorized by § 512.020. That appeal permits Roosevelt to challenge and this Court to decide whether plaintiffs

---

1. This is the second action between the same parties involving the same issues. However, in the previous action plaintiffs sought injunctive relief. *Community Title Co. v. Roosevelt Fed. Sav.*, 670 S.W.2d 895 (Mo.App.1984).

made a submissible case. *Boyer v. Grand-view Care Center, Inc.*, 793 S.W.2d 346, 347 (Mo. banc 1990); *Robbins v. Jewish Hospital of St. Louis*, 663 S.W.2d 341, 344 (Mo.App.1983); *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 941 (Mo.App.1983). If plaintiffs failed to make a submissible case, the order for new trial must be reversed and the cause remanded for entry of a judgment notwithstanding the verdict.

Defendant's brief presents several grounds upon which it claims plaintiffs failed to make a submissible case. One of those grounds is that Roosevelt is a federally regulated savings and loan, and the federal statutes and regulations preempt the plaintiffs' cause of action. Another basis is that the evidence fails to support plaintiffs' cause of action under state law. If this case may be decided exclusively under state law, the question of federal law need not be decided.

■ Our review necessarily begins with the determination of whether plaintiffs made a submissible case against defendant for tortious interference with a contract or business expectancy. In determining whether plaintiffs made a submissible case, the Supreme Court must view the evidence and inferences therefrom in a light most favorable to the plaintiffs and disregard all contrary evidence. *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503, 504 (Mo. banc 1986).

Community and Chicago research and write title and insurance binders for both owners and mortgagees of real estate. When a purchaser of real estate requests title insurance and anticipates securing a debt with the purchased property, the practice of Community and Chicago is to sell both an owner's and lender's policy and charge a separate fee for each. A larger fee is charged for an owner's policy because the lender's policy requires little additional research. The fees for both policies are usually paid when the transaction is closed.

Roosevelt's principle business is making loans for the purchase of residential real estate. The loans are secured by a deed of trust on the real estate. As a condition of granting a loan, Roosevelt requires borrowers to provide a mortgagee's title insurance policy. Roosevelt's standard loan commitment form provides in part "A Mortgagee's title insurance policy issued by a title insurance agency and underwriter acceptable to [Roosevelt], in its discretion, shall be required, the cost of which shall be paid by the Borrower." Roosevelt is the insured party in the mortgagee's title insurance policy. Roosevelt's past practice was to accept mortgagee's title insurance policies issued by Community and Chicago.

In about 1980 home loan interest rates increased dramatically. The resulting decline in real estate sales led to a loss of significant revenue to real estate and title insurance agencies. Faced with the problem, real estate agencies requested Community's advice and assistance in the use of a "contract for deed" as an alternative means of financing and selling homes. The purpose of the contract for deed was for the buyer to get the benefit of the seller's existing low interest rate on his mortgage. However, Roosevelt's form deed of trust contained a provision that if any interest in the real property securing the loan was sold or transferred, Roosevelt could declare the entire secured debt due immediately. When Roosevelt was informed of a sale or transfer, it exercised the acceleration provision, because Roosevelt's older loans were returning substantially lower interest rates than new loans. The only way to complete a successful contract for deed was to conceal it from the mortgage holder, to prevent acceleration of the loan under the due-on-sale clause.

Community designed a program of documents and services for contract for deed sales which were made available to area real estate agents and brokers. Community's officers also gave presentations and seminars to agents and brokers concerning the contract for deed program, and actually prepared many individual contracts for deed.

Roosevelt became aware that Community had written contracts for deeds for some of Roosevelt's borrowers. In December of 1981, Roosevelt sent letters to title insur-

ance companies, including Community, requesting notice of any real estate sale closing on which Roosevelt held a deed of trust unless Roosevelt had provided written approval of the transaction. Community did not respond to that letter.

Subsequently Roosevelt wrote to the Federal Home Loan Bank Board (FHLBB), the regulatory agency for all federally chartered savings and loans, describing the activities of Community and requested an opinion as to whether they could refuse to accept title policies from the companies engaged in contract for deed activities. The FHLBB responded that the activity would not violate its regulations. *See 12 C.F.R. § 563.35.*

In April of 1982 Roosevelt informed Community that it would no longer accept mortgagee title binders on policies from Community until such time as Roosevelt received assurance satisfactory to it that Community had ceased its contract for deed activities. Community then had Chicago Title issue mortgage title insurance binders to Roosevelt. Roosevelt also rejected the title binders issued by Chicago. Roosevelt began the practice of advising its loan applicants that of the major companies writing mortgagee title insurance, Community Title and Chicago Title were not acceptable. Roosevelt's purpose was to discourage Community and its officers from participating in contract for deed transactions which might complicate or defeat enforcement of the due-on-sale provisions of Roosevelt's deeds of trust.

In 1982, Community filed a petition for an injunction alleging tortious interference with their business expectancies by Roosevelt. The petition sought an order permanently enjoining and restraining Roosevelt from its practice of rejecting plaintiffs' mortgagee title insurance policies. On appeal the court denied injunctive relief because an injunction would require state courts to monitor and supervise Roosevelt's lending decisions for an indefinite period time, an injunction would interfere with a policy of uniform federal control, and such supervision would place an undue burden on the court. *Community*

*Title Co. v. Roosevelt Fed. Sav.*, 670 S.W.2d 895, 904 (Mo.App.1984). The court concluded that a breach of contract or tort claim alleging actual damages "might have required a different analysis." *Id.* Taking a cue from the court of appeals, plaintiffs filed this action for money damages claiming tortious interference with a contract or business expectancy.

■ A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and, (5) damages resulting from defendant's conduct. *Fischer, etc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 315 (Mo. banc 1979).

■ Under Missouri law a plaintiff has the burden of producing substantial evidence to establish the absence of justification. *Sisters of St. Mary v. Blair*, 766 S.W.2d 773, 775 (Mo.App.1989). It is not justification to knowingly procure the breach of a contract where the defendant acts with an improper purpose and seeks not only to further his own interests, but in doing so employs improper means. *Friedman v. Edward L. Bakewell, Inc.*, 654 S.W.2d 367, 370 (Mo.App.1983). But there is no impropriety of self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy. *Id.* One who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest. *O'Connor v. Shelman*, 769 S.W.2d 458, 461 (Mo. App.1989); *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 282 (Mo.App. 1978). No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification. *Herring v.*

*Behlmann,* 734 S.W.2d 311, 314 (Mo.App. 1987).

The business expectancy involved here was a lender's policy of title insurance. Roosevelt's loan commitment form required borrowers to provide such a policy from a title insurance company it approved. Roosevelt, as the beneficial party to the title insurance policy, had an economic interest in the proposed policy. In addition Roosevelt had an economic interest in identifying those who sold or transferred an interest in property upon which Roosevelt held a deed of trust containing a due-on-sale clause. Community was facilitating and promoting activity to defeat enforcement of the due-on-sale clause. Because of the economic interest in the title insurance policy and in identifying its borrowers who entered into contracts for deeds, Roosevelt was entitled to reject a title insurance policy issued by plaintiffs unless in doing so it employed some improper means. *Lick Creek Sewer Systems v. Bank of Bourbon,* 747 S.W.2d 317, 323 (Mo.App.1988); *Hill v. Kansas City Star Co.,* 719 S.W.2d 808, 811 (Mo.App.1986); *Pillow,* 564 S.W.2d at 282.[2]

Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference. *W. Prosser, Law of Torts,* § 129 at 936–37 (4th ed. 1971); *Conklin v. Karban Rock, Inc.,* 94 Or.App. 593, 767 P.2d 444, 448 (1987). The means used by Roosevelt did not involve misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law.

Appellant's reply brief suggests that the evidence shows an absence of justification because "Roosevelt cannot do business in such a way that it tortiously interferes with the business relationships or expectancy of others." However, that argument brings us back full circle to the question of what constitutes tortious interference with a business expectancy. The mere fact that defendant's conduct may have had a negative effect on plaintiffs' business expectancies does not, *a fortiori,* establish an absence of justification. In sum, plaintiffs' evidence of an absence of justification falls short of the mark.

Plaintiffs also argue that it is improper for Roosevelt, as a third party beneficiary, to refuse to approve plaintiffs' title insurance policies because Roosevelt did not deal directly with plaintiffs for the purchase of the policy. That argument fails to acknowledge that Roosevelt was not only a third party beneficiary, but it had an unconditional contractual right to approve or disapprove the company that provided mortgagee title insurance policies. Roosevelt's motive in exercising the contractual right was to protect an economic interest of its own rather than an altruistic motive. However, protecting one's own economic interest is not an improper motive. Roosevelt is privileged to protect its own economic interest from conduct it considers reprehensible, provided it does not resort to improper means.

In support of the argument that defendant was not justified on the basis of economic interest to interfere with their expectancy, plaintiffs cite cases holding that third-party beneficiaries to a proposed contract and incidental beneficiaries to a contract have no enforcible contract rights. *Halamicek Bros. v. R. & E. Asphalt Service,* 737 S.W.2d 193, 195 (Mo.App.1987); *Chmieleski v. City Products Corp.,* 660 S.W.2d 275, 289 (Mo.App.1983). Those authorities do not say a potential third-party beneficiary has no economic interest in a proposed contract from which it is to benefit. The cases do not address the circumstances under which a third-party beneficiary may justifiably interfere with the business expectancy of one of the primary parties to a proposed contract. Finally, the cited cases do not involve claims of tortious interference with a contract. The cases are inapposite.

---

**2.** Plaintiffs' brief attempts to distinguish the facts in the cases cited from the facts here.

While the facts in each case are different, the legal principles are applicable.

The plaintiffs failed to make a submissible case of tortious interference with a business expectancy because their proof failed to establish an absence of justification for defendant's actions. Accordingly the order of the trial court granting a new trial is reversed and the cause is remanded to the circuit court for entry of a judgment in favor of defendant notwithstanding the verdict.

BLACKMAR, C.J., RENDLEN, HIGGINS and COVINGTON, JJ., and SEILER, Senior Judge, concur.

ROBERTSON, J., not participating.

BILLINGS, J., not sitting.