Christopher W. FORKIN,
Respondent/Cross–
Appellant

v.

CONTAINER RECOVERY CORPORATION, et al., Appellants/Cross–Respondents.

No. 60897, 60978.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 30, 1992.

Application to Transfer Denied
Sept. 22, 1992.

The Stolar Partnership, H. Kent Munson, St. Louis, for appellant/cross-respondents.

Becker, Dufour, Yarbrough & Berndsen, Thomas G. Berndsen, Charles F. Dufour, St. Louis, for respondent/cross-appellant.

KAROHL, Judge.

This lawsuit emanates from the discharge of an employee at will by his employer, Container Recovery Corporation (CRC). Plaintiff, Christopher W. Forkin,[1] in a second amended petition sued defendants Thomas A. Stengel, G. Weber Gaskin, William I. Solomon, Joseph L. Goltzman, Berry H. Beracha, Ted Atwood, CRC and Anheuser–Busch Companies, Inc. for tortious interference with prospective employment relations, Count I, libel and slander, Count II, tortious interference with existing employment relationship, Count III, and civil conspiracy, Count IV. The court granted defendants summary judgment on Count I. CRC filed a counterclaim against plaintiff in negligence for money damages for the loss of a security interest in an item of personal property. Plaintiff amended his second amended petition by interlineation adding Count V, wrongful termination, against CRC. The court dismissed Count V for failure to state a cause of action. The day of trial, plaintiff dismissed Count II, without prejudice, as to defendants Beracha, Goltzman, Solomon, Gaskin and Atwood.

On the counts submitted to it, the jury found in favor of: (a) defendants Beracha, Atwood and Anheuser–Busch and against defendants Stengel, Weber, Solomon and Goltzman on Count III; (b) CRC on the claim of slander; and (c) plaintiff on CRC's counterclaim. On Count III, the jury awarded plaintiff $29,952 in actual damages and six percent of the net worth of each of the defendants, Stengel, Weber, Solomon and Goltzman, as punitive damages.

Defendants Stengel, Weber, Solomon and Goltzman raise six issues on appeal. Plaintiff raises three issues on cross appeal. We find defendants' first point which challenges the sufficiency of the evidence is dispositive. The cross appeal does not pertain to any defendant who prevailed at trial, none of whom are parties to this appeal. We reverse the judgment and affirm dismissal of Count V.

The evidence viewed in the light most favorable to the verdict shows at the time of his termination on July 3, 1986, plaintiff was employed by CRC as a field marketing representative. CRC is a wholly-owned subsidiary of Anheuser–Busch Companies, Inc. It is engaged in the business of acquiring and recycling used aluminum beverage containers. Collectively, the individual defendants were employees of CRC and supervisors of plaintiff in the following ascending capacity:

(1) Stengel was CRC's National Sales Manager and plaintiff's immediate supervisor;

(2) Gaskin was CRC's Director of Recycling and Marketing and Stengel's immediate supervisor;

(3) Solomon was CRC's Vice–President and General Manager and Gaskin's immediate supervisor; and

(4) Goltzman was President of CRC and Solomon's immediate supervisor.

During the Spring of 1985, CRC loaned money to United States Metal Recyclers (USMR) of Chicago. In order to secure repayment, CRC needed to obtain and record a Uniform Commercial Code Financing Statement (UCC–1) and thereby perfect

---

1. Plaintiff is deceased. The personal representative of his estate has been substituted as a party to this appeal.

a lien on the Mosley Baler. Section 400.9–302(1) RSMo Cum.Supp.1991.

In a letter dated January 29, 1985, Mr. Trieschmann, an attorney in the Anheuser–Busch legal department, directed plaintiff to obtain the debtor's signature on the UCC–1 document and return the signed UCC–1 to Ms. Holland in the Anheuser–Busch credit department. The letter read: "Please give Diane Holland an asset description. She will give you four (4) copies of the financing statement *which must be executed and returned to her for filing.*" (Our emphasis). In the letter dated February 12, 1985, Ms. Holland gave plaintiff the following instructions:

> Attached are the three UCC Financing Statements on U.S. Metal Recyclers Inc., Chicago, IL. Have them sign where is [sic] says "Signature of Debtor". [sic] On all three copies. Return them to us when signed and we will handle the processing.
>
> \*    \*    \*    \*    \*    \*
>
> Do Not have anyone from CRC sign where we have typed Anheuser–Busch Cos. Inc. Asst. Treasurer. We will have Rick Hill sign for us.

In June 1986 CRC learned USMR liquidated and went out of business. CRC did not have a perfected lien on the Mosley Baler because no UCC–1 Financing Statement was ever filed. CRC financed the Mosley Baler at a cost of $322,000. The baler had a fair market value of $145,000 at the time USMR made an assignment for the benefit of secured creditors. Defendants investigated failure to have a security interest and the loss. Each defendant in turn came to the conclusion plaintiff's employment with CRC should be terminated for failing to complete the assignment as directed by attorney Trieschmann. Plaintiff was terminated on July 3, 1986. For purposes of appeal, we assume without reference to the evidence, that all defendants were equally responsible for plaintiff's discharge.

On appeal defendants filed separate but substantially similar briefs. Because there is a common basis of fact and law, we address their claims of error collectively. In their first point, defendants allege:

> THE TRIAL COURT ERRED IN DENYING [DEFENDANTS'] MOTIONS FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE PLAINTIFF FAILED TO PRODUCE SUFFICIENT EVIDENCE TO ESTABLISH THE NECESSARY ELEMENTS OF PLAINTIFF'S TORTIOUS INTERFERENCE WITH A CONTRACT CLAIM TO-WIT: (A) THAT DEFENDANT[S] ... INTENTIONALLY CAUSED A BREACH OF ANY CONTRACT BETWEEN PLAINTIFF AND CONTAINER RECOVERY CORPORATION; (B) THAT DEFENDANT[S] ... ACTED SOLELY FOR [THEIR] PERSONAL BENEFIT AND WITHOUT JUSTIFICATION; (C) THAT THERE WAS A CONTRACT BETWEEN PLAINTIFF AND CONTAINER RECOVER CORPORATION.

We observe defendants did allege subpart C in their motion for new trial. However, they did not submit subpart C as a basis for granting a directed verdict or JNOV to the trial court. Accordingly, subpart C is not preserved as a ground of trial court error in denying motions for directed verdict or JNOV. We limit our discussion to the preserved error in this point, subpoints A and B.

The elements comprising a prima facie case for the tort of interference with a contract or business expectancy are:

(1) a contract or valid business expectancy;

(2) defendant's knowledge of the contract or relationship;

(3) intentional interference by defendant inducing or causing a breach of the contract or relationship;

(4) absence of justification; and

(5) damages resulting from defendant's conduct.

*Community Title v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W.2d 369, 372 (Mo. banc 1990).

All elements of this intentional tort must be proven. *Green v. Beagle–*

*Chilcutt Painting Co., Inc.,* 726 S.W.2d 344, 352 (Mo.App.1987). " '[N]o fact essential to submissibility can be inferred absent a substantial evidentiary basis.' " *Id.* (citing *Francisco v. Kansas City Star Co.,* 629 S.W.2d 524, 529 (Mo.App.1991)). In Missouri, plaintiff has the burden of producing substantial evidence to establish the absence of justification. *Community Title,* 796 S.W.2d at 372. "Absence of justification is the absence of any legal right to take the actions complained of." *Meyer v. Enoch,* 807 S.W.2d 156, 159 (Mo.App.1991). "No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Community Title,* 796 S.W.2d at 372.

■ Here, plaintiff's evidence is that he was an employee at will of CRC. He was given an assignment by attorney Trieschmann to obtain a signature from USMR representative, Mr. Pozan, on the UCC–1 and return it to Ms. Holland in the credit department at Anheuser–Busch. Plaintiff testified he obtained the necessary signatures but he gave the document to defendant Stengel, an employee of CRC, not the Anheuser–Busch credit department. Plaintiff admitted he did not tell any of the defendants that he had obtained the signature and gave the signed UCC–1 to Stengel rather than the credit department. Plaintiff admitted he let the defendants believe he failed to both obtain the signature and deliver the document to the credit department until he filed his suit, some two years later. Clearly, defendants as officers of CRC and supervisors of plaintiff, had a legal right to discharge plaintiff, an employee at will, for failure to complete an assignment and, thus, breaching his employment contract with CRC. *See Stokes v. Enmark Collaborative,* 634 S.W.2d 571, 573 (Mo.App.1982). Even if plaintiff had the UCC–1 signed, his evidence is that he failed to follow attorney Trieschmann's instructions to return it to Ms. Holland. Plaintiff was employed by CRC and his admitted breach of his assignment ultimately caused CRC to sustain a loss.

Plaintiff's own evidence supports the conclusion the discharge was justified.

However, plaintiff argues, both at trial and on appeal, defendants were not justified in firing him. In order to show defendants were not justified, plaintiff must show defendants were motivated by malice and not motivated by a desire to act in their supervisory capacity for the benefit of CRC. *See Franklin v. Harris,* 762 S.W.2d 847, 849 (Mo.App.1989). He argues defendants conspired to make him a scapegoat:

> in order to divert attention away from Defendants' failure to establish and implement proper UCC–1 filing procedures and to conceal from Berry Beracha, CRC's Board of Directors and the Anheuser–Busch parent company, the fact that they had allowed CRC's entire contract administration and internal control system to fall apart.

Plaintiff makes much of the fact CRC implemented new written procedures for obtaining UCC–1 Financing Statements after the loss of the security interest in the Mosley Baler and that defendants as well as the credit department did not follow up on the status of the UCC–1 during the six week period surrounding the USMR closing date. Even so, plaintiff is burdened with the fact he failed to complete an assignment and his breach of duty caused the financial loss by CRC. Even if the facts plaintiff seeks to rely upon are true and others were also at fault, this does not abrogate his failure or make defendants' actions illegal. Plaintiff's employment was with CRC. He breached a duty owed to CRC. It is immaterial that anyone else may have avoided the loss. CRC's discharge of plaintiff was justified.

Furthermore, plaintiff presented no substantive evidence to support his theory of a conspiracy among the defendants or that defendants were motivated solely by a desire to save their own employment. Proof of intent requires proof defendants intended to commit an act which is ascertained to be wrongful and defendants knew was wrongful at the time the act was committed. *Francisco,* 629 S.W.2d at 530. The only evidence plaintiff presented regarding

intent was his own conclusory testimony and the conclusory opinion of Ted Atwood, an employee of CRC. Plaintiff recorded a telephone conversation with Atwood. The recording was played for the jury. Neither plaintiff nor Atwood articulated facts to support a finding they personally observed events which would support their conclusion that defendants conspired to terminate plaintiff's employment with CRC in order to save their own employment. *See Patton v. May Dept. Stores Co.,* 762 S.W.2d 38, 42 (Mo. banc 1988). The jury and the court were left to speculate that this was the motivation and intent of defendants. Moreover, as discussed above, the evidence does not support plaintiff's claim defendants engaged in any inherently wrongful activity by firing him. Accordingly, plaintiff failed to establish intent, an element necessary to support his claim for tortious interference with contract.

We find the evidence viewed most favorable to plaintiff fails to establish the elements of intent and lack of justification. There is absolutely no evidence of any wrongful or improper means employed by defendants which ended in the termination of employment of plaintiff by CRC. The discharge was not proven wrongful. Plaintiff has not made a prima facie case. Therefore, we need not discuss the possibility of affirmative defenses including the issue of privilege of corporate officers. *See Meyer v. Enoch,* 807 S.W.2d 156, 159 (Mo.App.1991). Nor do we need to reconcile any possible differences in *Meyer,* 807 S.W.2d at 156, *Honigmann v. Hunter Group, Inc.,* 733 S.W.2d 799 (Mo.App.1987) and *Nola v. Merollis Chevrolet, Kansas City, Inc.,* 537 S.W.2d 627 (Mo.App.1976) because burden of proof is not an issue in this case where plaintiff admitted failure to perform duties as employee. The trial court erred in submitting plaintiff's claim for tortious interference with contract to the jury. The judgment awarding actual and punitive damages is reversed.

In his cross appeal, plaintiff alleges the court erred in dismissing Count V for failure to state a cause of action:

BECAUSE THE COURT SHOULD HAVE RECOGNIZED AN EXCEPTION TO THE EMPLOYMENT–AT–WILL DOCTRINE IN THAT CRC HAD FIRST SUED PLAINTIFF AND SOUGHT MONETARY DAMAGES FROM PLAINTIFF FOR ALLEGED NEGLIGENCE IN THE PERFORMANCE OF HIS DUTIES AS AN AT–WILL EMPLOYEE OF CRC ARISING OUT OF THE SAME SET OF OPERATIVE FACTS.

Plaintiff argues if an employer sues an employee at will for alleged negligence, the employer should lose the protection of the employment at will doctrine and be subject to suit for wrongful discharge. We decline to carve out such an exception. We see no public policy which would be served by waiving an element of wrongful discharge for plaintiff. *See Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988). Point denied.

Having disposed of the judgment and all counts plaintiff pled and did not voluntarily withdraw, the remaining points on appeal and cross appeal are rendered moot.

SMITH, P.J., and AHRENS, JJ., concur.

