**THOMAS PHELPS FOUNDATION,**
**Plaintiff/Respondent,**

v.

**CUSTOM INSURANCE COMPANY, INC.,**
**Joe Whaley, agent, Defendant,**

and

**Continental Insurance Company,**
**Inc., Defendant/Appellant,**

and

**Fidelity And Casualty Company Of**
**New York, a New Hampshire**
**Corporation, Defendant.**

**No. 72867.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 28, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1998.

---

Lawrence B. Grebel, Timothy W. Luft, St. Louis, for appellant.

Andrew D. Sandroni, St. Louis, for respondent.

CRANE, Presiding Judge.

Workers' compensation insurance carrier appeals from the judgment entered on a jury verdict against it on insured's claim for tortious interference with a business expectancy. Insured claimed that the carrier indirectly notified a subdivision developer that the insured's workers' compensation insurance policy had been cancelled, as a result of which the developer terminated its use of the insured as its subcontractor to pour house foundations. The carrier challenges the submissibility of the claim on the grounds that the insured failed to adduce sufficient facts to submit the elements of knowledge of the business relationship, intentional interference inducing or causing a breach of that relationship, or absence of justification for doing so. We reverse and remand.

## FACTUAL BACKGROUND

Plaintiff Thomas Phelps Foundation was a foundation subcontractor involved in pouring foundation walls for residential developments. Thomas Phelps was the president of the plaintiff and his wife, Jeri Phelps, handled the administrative duties. Joe Whaley, an agent for Custom Insurance Company, Inc. (Custom), was plaintiff's insurance agent and the servicing producer/broker for plaintiff's workers' compensation insurance policy. Whaley obtained plaintiff's policy of workers' compensation insurance through the NCCI pool, which assigned defendant Continental Insurance Company, Inc. (Continental) as plaintiff's carrier. Continental was plaintiff's workers' compensation insurance carrier for the policy period from June, 1992 to June, 1993 and for part of the policy period beginning in June, 1993.

Workers' compensation insurance premiums are based on the employer's estimated payroll and are paid at the beginning of the policy period. Plaintiff financed its workers' compensation policy premium through a finance company which paid Continental $8,538.00 at the beginning of the 1992–1993 policy period and $11,103.00 at the beginning of the 1993–1994 policy period.

At the expiration of each policy period, the carrier audits the policy premium. When the 1992–1993 policy expired, Continental's audit concluded that, based on actual payroll, plaintiff owed an additional $4,256.00 for its 1992–93 premium. Continental issued an audited premium bill to plaintiff for the 1992–1993 policy period in the amount of $4,256.00 to be paid by September 19, 1993. Plaintiff failed to remit payment to Continental prior to September 19, 1993. On October 8, 1993 Continental issued a cancellation notice for plaintiff's 1993–1994 policy. The October 8, 1993 notice indicated that the 1993–1994 policy would be canceled effective November 14, 1993 if plaintiff did not pay the $4,256.00 for the 1992–1993 audited premium by that date.

In addition, the audit also determined that plaintiff owed an additional adjusted premium for the 1993–1994 policy period in the amount of $4,986.42. Continental sent the bill for the 1993–1994 adjusted premium to plaintiff on October 6, 1993.

Plaintiff adduced no evidence that it fully paid either amount. It made partial payments of $2,128.00 on November 2, 1993 and $1,000.00 on February 23, 1994. All of plaintiff's witnesses testified that the policy was canceled on November 14, 1993.

The subdivision developer, Travis–Shane, had chosen plaintiff as the foundation subcontractor to pour ninety foundations for the residential development, the Mission Hills subdivision. Although plaintiff and Travis–Shane had no written contract, Travis–Shane intended to use plaintiff to pour all of the foundations for the subdivision. At the end of January, 1994, plaintiff began pouring foundations for the Mission Hills subdivision.

On February 22, 1994 plaintiff's employee, Allen Butler, reinjured his shoulder while working on the Mission Hills subdivision. Butler had previously filed a workers' compensation claim on November 11, 1992 for a shoulder injury he sustained while working for plaintiff. He filed a new claim for the 1994 injury. Continental originally denied the claim on the basis that no coverage existed for the loss because the policy had been canceled on November 14, 1993. However, Continental eventually paid the claim as part of the 1992 claim which was still open.

In February, 1994, shortly after the Butler claim was made, Continental contacted Cus-

tom and told it that plaintiff's workers' compensation insurance had been canceled prior to the claim, and the claim was therefore not covered. On March 17, 1994 Custom sent a letter to Travis–Shane and other certificate holders indicating that the certificates of insurance were rescinded because the policy had been canceled in November, 1993. Travis–Shane asked plaintiff to leave the Mission Hills subdivision job when it received the notice that plaintiff was no longer insured.

## TRIAL COURT PROCEEDINGS

Plaintiff filed an action seeking damages for libel and tortious interference with a business expectancy against Custom and its agent, Joe Whaley, as well as Continental.[1] The case was tried before a jury. Plaintiff called seven witnesses to testify. Continental offered the deposition testimony of one witness, Nicole Clayton Sawyer, a Continental adjuster. The trial court granted both defendants' motions for directed verdict on the libel counts but denied their motions on the tortious interference counts. The jury returned a verdict in favor of Custom and its agent, Joe Whaley, but found against Continental and awarded plaintiff $90,000.00 in actual damages. The trial court denied Continental's motion for judgment notwithstanding the verdict and entered its judgment in accordance with the jury verdict.

## APPELLATE JURISDICTION

■ As a preliminary matter, plaintiff asks that we reconsider our denial of its motion to dismiss the appeal on the grounds that the notice of appeal was filed out-of-time. Within a month after the judgment became final, Continental requested a special order from this court pursuant to Rule 81.07(a) to allow the late filing of its notice of appeal, which we granted. Continental's request was timely under Rule 81.07. It did not have to make the request before the time allowed for filing a notice of appeal expired. *See* Rule 81.07(a). We deny plaintiff's request for reconsideration.

1. Plaintiff also named Fidelity and Casualty Company of New York as a defendant. Pursuant to agreement, Fidelity and Continental were

## DISCUSSION

■ For its sole point on appeal, Continental challenges the trial court's denial of its motion for judgment notwithstanding the verdict and contends that plaintiff failed to make a submissible case of tortious interference with a business expectancy. Review of the denial of a motion for judgment notwithstanding the verdict requires the court to determine whether the plaintiff made a submissible case. *Kimbrough v. J.R.J. Real Estate Investments, Inc.*, 932 S.W.2d 888, 889 (Mo.App.1996).

The criteria to evaluate whether a submissible case is made is set out in *Steward v. Goetz*, 945 S.W.2d 520 (Mo.App.1997) as follows:

To make a submissible case, substantial evidence is required for every fact essential to liability. *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626 (Mo.App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985). The question of whether evidence in a case is substantial and whether the inferences drawn are reasonable are questions of law. *Id.*

In determining whether a plaintiff has made a submissible case, we view the evidence in the light most favorable to that plaintiff. *Eidson*, 863 S.W.2d at 626. We presume the plaintiff's evidence to be true and give the plaintiff the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Id.* We disregard defendants' evidence that does not support the plaintiff's case. *Feely v. City of St. Louis*, 898 S.W.2d 708, 709 (Mo.App. 1995). However, we do not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Eidson*, 863 S.W.2d at 626.

treated as one in the same and were referred to at trial as "Continental."

A party is bound by the uncontradicted testimony of that party's own witnesses, including that elicited on cross-examination. *Id.; Hurlock,* 709 S.W.2d at 879. When a party calls a witness who comes within the adverse witness rule, the party is bound by that witness's testimony on direct examination if the testimony is uncontradicted or the only testimony on the subject; however, an adverse witness's testimony on cross-examination is not binding on the calling party. *Id.*

Facts necessary to sustain a recovery may be proved by circumstantial evidence; but the circumstances proven must be such that the facts necessary to support a verdict may be inferred and must reasonably follow, the existence of such facts may not depend upon guesswork, conjecture and speculation, and the evidence should have a tendency to exclude every reasonable conclusion other than the one desired. *Osterhaus v. Gladstone Hotel Corporation,* 344 S.W.2d 91, 94 (Mo.1961); *Lappin v. Prebe,* 345 Mo. 68, 131 S.W.2d 511, 513 (1939). A submissible case is not made if it solely depends on evidence which equally supports two inconsistent and contradictory factual inferences as to ultimate and determinative facts because liability is then left in the realm of speculation, conjecture and surmise. *Eidson,* 863 S.W.2d at 626; *Hurlock,* 709 S.W.2d at 880.

*Id.* at 528–29.

■ To make a submissible case of tortious interference with a contract or business expectancy, a plaintiff must plead and prove the following five elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Community Title v. Roosevelt Federal S & L,* 796 S.W.2d 369, 372 (Mo. banc 1990); *Haas v. Town and Country Mortg. Co.,* 886 S.W.2d 225, 228 (Mo.App.1994).

Continental argues that plaintiff adduced insufficient evidence to submit Continental's knowledge of Phelps' business relationship with Travis–Shane, Continental's intentional interference inducing or causing a breach of that relationship, or Continental's absence of justification for doing so. We agree.

■ First, there was no evidence to support the element of knowledge. Plaintiff argues that the deposition testimony of Continental's only witness, Nicole Clayton Sawyer, that Continental received a telephone call from Allen Butler reporting his February, 1994 injury and a claim for compensation from the Division of Workers' Compensation is evidence that Continental was thereby informed of plaintiff's business relationship with Travis–Shane.[2] This deposition testimony does not indicate that either Butler or the Division of Workers' Compensation advised Continental of plaintiff's business relationship with Travis–Shane. The claim itself is not in the record. There was no evidence to support submission of the element of knowledge.

■ In addition, there was insufficient evidence that Continental intended to interfere with plaintiff's business relationship with Travis–Shane or lacked justification to do so to support submission of these elements. Plaintiff claims that Continental intentionally misrepresented that the policy had been canceled when in fact it had not. Plaintiff asserts that Continental was not justified in communicating this misrepresentation of fact to Custom. Plaintiff failed to produce sufficient evidence at trial to show that the policy was not canceled on November 14, 1993 and that Continental's communication to Custom was an intentional and wrongful misrepresentation of fact.

■ One who has a present existing economic interest is privileged to interfere with another's business expectancy to protect one's own economic interest. *Community Title,* 796 S.W.2d at 372. No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification. *Id.* However, a defendant is not justified to

---

**2.** Although Custom issued a certificate of insurance to Travis–Shane on February 24, 1994, it failed to send a copy of this or any other certificates of insurance to Continental.

knowingly interfere with a contract or business expectancy where the defendant seeks not only to further his own interests, but acts with an improper purpose and in doing so employs improper means. *Id.* Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference. *Id.* at 373 (citing W. PROSSER, LAW OF TORTS, Sec. 129 at 936–37 (4th ed.1971)). In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. banc 1993).

As stated, a plaintiff is bound by the uncontradicted testimony of its own witnesses, including that elicited on cross-examination. *Steward*, 945 S.W.2d at 528. All of plaintiff's witnesses to testify on the issue testified that the policy was canceled. Plaintiff's insurance expert, Richard Walkenbach, testified on cross-examination that it was his understanding that the plaintiff's workers' compensation policy was canceled as of November 14, 1993 and that, if Custom sent a letter to its certificate holders indicating that the policy was canceled on November 14, 1993, that would have been a true statement. He further testified that if plaintiff had not paid the full amount of the money by November 14, 1993, the policy would be canceled. Plaintiff's witness Thomas Phelps admitted at trial that he received a letter canceling the policy effective November 14, 1993 for non-payment of the 1992–1993 audit premium in the amount of $4,256.00 which was due on September 19, 1993, if not received by November 14. He admitted that when Custom sent the letter to Travis–Shane, Continental had canceled his policy. Jeri Phelps testified on cross-examination:

Q: In fact, you found out your policy was, indeed, canceled on November 14, 1993?

A: Yes.

Jane LoCascio, senior underwriter for Continental, called as a witness by plaintiff testi-

fied on direct examination that the policy was canceled on November 14, 1993.[3]

Plaintiff argues that it adduced evidence from which an inference could be drawn that the policy was not in fact canceled. It points to evidence which it claims showed Continental acted inconsistently with cancellation, that Continental had paid the Butler claim for the 1994 injury, had accepted partial payment of the audited premium, had not notified the producer of the cancellation, and had not timely conducted a cancellation audit as evidence supporting an inference that the policy had not been canceled. We do not find this conduct so inconsistent with cancellation as to reasonably support an inference that the policy was not canceled.

More importantly, plaintiff is not entitled to make a submissible case by relying on an inference which is contrary to that plaintiff's only direct evidence on the issue. *Akers v. Lever Brothers Company*, 432 S.W.2d 200, 204 (Mo.1968).

'A plaintiff cannot have the jury disregard his only direct evidence on the point and find that the fact is exactly the opposite on the basis of inferences from circumstances also stated in the testimony of this same witness. This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact.'

*Pruiett v. Wilform*, 477 S.W.2d 76, 79 (Mo. 1972) (quoting *Draper v. Louisville & N.R. Co.*, 348 Mo. 886, 156 S.W.2d 626 (Mo.1941)). All of plaintiff's direct evidence on the issue was that the policy was canceled.

Because plaintiff failed to adduce sufficient facts to submit each of the elements of its tortious interference claim, the trial court erred in submitting that claim to the jury. The trial court's judgment is reversed and the case is remanded for entry of judgment in favor of Continental.

GRIMM and RHODES RUSSELL, JJ., concur.

---

**3.** None of the other testimony elicited at trial contradicted the testimony that the policy was canceled on November 14, 1993. Joe Whaley, called by plaintiff, testified consistently on cross-examination that there was no question that the policy was canceled on November 14, 1993.