**KRUSE CONCEPTS, INC.,**
**Plaintiff–Appellant,**

v.

**SHELTER MUTUAL INSURANCE,**
**Defendant–Respondent.**

**No. ED 76427.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 2, 2000.

Blair Kenneth Drazic, Chesterfield, for Appellant.

Steven H. Schwartz, T. Michard Ward, Bart B. Zuckerman, St. Louis, for Respondent.

SHERRI B. SULLIVAN, Judge.

Kruse Concepts (Appellant) appeals from a summary judgment granted to Shelter Mutual Insurance (Respondent) in Appellant's suit against Respondent alleging tortious interference with its fire restoration contract to repair the home of Ronnie Moses (Moses). We affirm.

Respondent issued a homeowner's insurance policy to Moses, which provided coverage for property damage caused by fire. While the policy was in effect, fire damaged a portion of Moses' home. On August 20, 1996, Moses contracted with Appellant, a fire and water restoration contractor, to restore the fire damaged portions of his home. Moses and Appellant did not agree at that time to a price term, which was to be based upon "The Blue Book, Inc. rates."

Appellant and Respondent attempted to agree on the scope and cost of repairs necessary to restore Moses' home. Appellant and Respondent agreed that Appellant would replace the entire roof for $7,590.00. Appellant repaired the roof. Appellant and Respondent never reached an agreement on the scope and cost of restoration of the rest of the damaged portions of the house. Appellant provided its initial estimate of the cost of repair work. Respondent provided its estimate of $18,778.00. Appellant then provided a revised estimate of $29,749.00. Respondent provided its own revised estimate of $19,309.00. Despite their inability to reach an agreed upon estimate, Respondent gave Appellant $10,000.00 as partial payment in order to begin the work. Respondent again revised its estimate, based on the opinion of an unbiased, independent contractor, to $20,359.00.

Moses fired Appellant in November of 1996. Moses testified by deposition that he fired Appellant because of poor workmanship by Appellant's employees and additional damage to his property caused by Appellant's employees. Specifically, Moses testified that: (1) Appellant cut some of the roof rafters improperly, (2) Appellant installed the wrong type of roof vent, (3) Appellant improperly installed the electrical outlets in the bathroom, (4) Moses did not like some of Appellant's drywall work, (5) Appellant damaged some of Moses' property and never fixed it, and (6) Appellant's workers sometimes did not show up or were late.

Despite Moses' testimony, Appellant maintains that Moses terminated their contract because Respondent provided Moses with a bad faith estimate of his damages and announced that it would pay no more than the bad faith estimate, with the purpose of interfering with Appellant's contract. Appellant filed suit against Respondent, alleging that Respondent had intentionally and without justification caused Moses to terminate the restoration contract with Appellant. Respondent filed a motion for summary judgment. In response to the motion, Appellant filed an affidavit of its President, David Kruse (Kruse). In his affidavit Kruse stated that:

(1) he had been in the construction/restoration business for seven years and was familiar with the prevailing prices in the area of Moses' home,

(2) he had prepared several estimates and had submitted them to Respondent's claim adjusters, and Respondent had faxed estimates to him,

(3) he repeatedly protested that the estimates of Respondent were incorrect,

(4) on October 22, 1996, [Respondent] sent a letter to Kruse, which showed on its face a copy to Ronnie Moses, indicating that the only payments that would be made would be based upon the estimate of an unbiased contractor that had evaluated the loss,

(5) a copy of the estimate was enclosed, and it was very similar to [Respondent's] estimate,

(6) based upon his knowledge and experience, he was of the opinion that a claim adjuster of "even low competence would immediately know that all of [Respondent's] estimates were well below the honestly debatable range for the restoration of the Moses' home and also they did not include work that any honest adjuster would acknowledge needed done,"

(7) after having received [Respondent's] letter and estimate that Moses had called him and told him that he did not think the estimate was fair,

(8) Kruse advised Moses that Appellant would be willing to appraise the loss under the appraisal terms of the insurance policy and that Appellant would accept, as complete payment, whatever figure the appraisal determined,

(9) Moses agreed to the appraisal, however a few days later Moses called and his attitude had completely changed,

(10) Moses indicated that after calling [Respondent] that he would not appraise and that [Respondent] had told Moses that Appellant would take Moses to court to pay any of the charges above the final estimate,

(11) Moses indicated that [Respondent] had suggested Moses repair his house by using some of the insurance proceeds he received for damaged personal property, specifically, a pool table,

(12) Moses said to Kruse that he was tired of fighting with [Respondent], was worried about being canceled, and told Kruse to do no further work on the job,

(13) prior to that conversation [Moses] had voiced no problems with Appellant's work,

(14) at all times [Respondent's] adjuster and claims supervisor acted in a hostile and recalcitrant manner, and

(15) Appellant would have made additional money had it been permitted to complete the job.

According to Moses' deposition testimony, nothing Respondent said or did encouraged or caused him to terminate his contract with Appellant.

On March 6, 1997, Appellant filed suit against Respondent, alleging that Re-

spondent had intentionally and without justification caused Moses to terminate the restoration contract with Appellant. Respondent filed a motion for summary judgment. The trial court denied Respondent's original summary judgment motion. After further discovery, Respondent refiled its summary judgment motion, and attached thereto Moses' deposition, portions of Kruse's deposition, and other exhibits. Appellant filed a response opposing the motion to which he attached the Kruse affidavit set out above and other exhibits. The trial court granted this motion. Appellant timely filed this appeal.

■■ Summary judgment is designed to permit the Court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993); Rule 74.04. When considering appeals from summary judgment, the appellate court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* This makes appellate review essentially de novo. *Id.*

In its point on appeal, Appellant claims the trial court erred in granting summary judgment to Respondent because Kruse's affidavit establishes questions of material fact in that the affidavit: (A) includes expert evidence that the estimate that was sent to Moses was in bad faith and a misrepresentation of the actual damages to his home and thus established an unjustified interference with Appellant's contract;

and (B) establishes that Moses terminated his contract with Appellant because of the interference by Respondent, by way of admissible statements of Moses to Kruse, made at the very time of contract termination, either within the state of mind exception to the hearsay rule or which were not hearsay.

■■ A claim for tortious interference with a contract requires proof of each of the following: (1) a contract, (2) the defendant's knowledge of the contract, (3) intentional interference by the defendant inducing or causing a breach of the contract, (4) absence of justification, and (5) damages resulting from the defendant's conduct. *Thomas Phelps Foundation v. Custom Ins. Co., Inc.*, 977 S.W.2d 33, 37 (Mo.App. E.D.1998), *Community Title Co. v. Roosevelt Federal Sav. and Loan Ass'n*, 796 S.W.2d 369, 372 (Mo.banc 1990). In the instant case, the parties agree that there was a contract and Respondent knew of that contract. The issue presented is whether Respondent intentionally interfered with the contract without justification, causing its termination by Moses.

■■ Under Missouri law, a plaintiff has the burden of producing substantial evidence to establish the absence of justification. *Community Title*, 796 S.W.2d at 372. It is not justification to knowingly procure the breach of a contract where the defendant acts with an improper purpose and seeks not only to further his own interests, but in doing so employs improper means. *Id.* But there is no impropriety of self-interested interference when a defendant has a legitimate economic interest in the contract. *Id.* One who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest. *Thomas Phelps*, 977 S.W.2d at 37, *Community Title*, 796 S.W.2d at 372. No liability arises for interfering with a contract

if the action complained of was an act that the defendant had a definite legal right to do without any qualification. *Thomas Phelps,* 977 S.W.2d at 37, *Community Title,* 796 S.W.2d at 372.

In the instant case, as Moses' insurer, Respondent had a contract of its own with Moses to compensate him for the cost of restoring his home. Accordingly, Respondent also had an economic interest in the amount charged by Appellant for the restoration of Moses' home because Respondent was contractually obligated to pay most of Moses' restoration costs. Respondent was also legally entitled to submit its estimate of Moses' fire loss, unless in so doing it employed some improper means.

■ Improper means, for purposes of intentional interference with contractual relations, are those means which are independently wrongful, notwithstanding injury caused by the interference. *Thomas Phelps,* 977 S.W.2d at 38, *Community Title,* 796 S.W.2d at 373. Improper means include misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law. *Thomas Phelps,* 977 S.W.2d at 38, *Community Title,* 796 S.W.2d at 373, *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 317 (Mo.banc 1993).

Appellant maintains that an insurance company's submission of bad faith estimates to its insured is wrongful conduct sufficient for a recovery for tortious interference. Specifically, Appellant claims that Kruse's affidavit establishes misrepresentation of fact by Respondent, in that Respondent's estimates of Moses' loss were "below reasonable and failed to include work that obviously needed to be done."

■ Respondent's estimate of the amount of Moses' loss was an opinion, not a statement of fact. Fraudulent misrepresentation cannot be based on a mere opinion. *Meyer v. McGarvie,* 856 S.W.2d 904, 908 (Mo.App. E.D.1993). See, e.g., *Bald-win Properties, Inc. v. Sharp,* 949 S.W.2d 952, 957 (Mo.App. W.D.1997) (Letter from engineer to prospective purchasers of home indicating that there were significant water leakage problems in basement that would cost at least $11,500 to repair did not misrepresent facts, but made only statements of opinion, and thus, did not constitute improper means required for imposition of liability for tortious interference with business expectancy). Even Kruse's language in his affidavit and Appellant's language in its brief indicate that Respondent's estimates were not representations of fact: "the Shelter bids were below *reasonable*" and "all of Shelter's estimates were well below the *honestly debatable range* for the restoration of the Moses' home." Facts are not "reasonable" or "honestly debatable." Opinions are reasonable or debatable. Furthermore, the definition of "estimate" is "a judgment or opinion" or "a statement of the approximate charge for work to be done...." Webster's College Dictionary 447 (2 nd ed.1997). Appellant's contention that Respondent's estimates were misrepresentations of fact fails as a matter of law.

■ Appellant also argues that, even if not misrepresentations, Respondent's estimates were made in bad faith. Bad faith, as an improper means to support a claim for intentional interference with contract, has been recognized in cases involving a fiduciary or agency relationship. See, e.g., *Macke Laundry Service Limited Partnership v. Jetz Service Company, Inc.,* 931 S.W.2d 166 (Mo.App. W.D.1996), *Eib v. Federal Reserve Bank of Kansas City,* 633 S.W.2d 432 (Mo.App. W.D.1982). However, the instant case involves a contractual relationship, not a fiduciary relationship. Further, the relationship between an insured and an insurer is of an adversarial nature, with no independent duty of good faith. *State ex rel. Safeco National Insurance Company v. Rauch,* 849 S.W.2d 632, 634–635 (Mo.App. E.D.1993). Moreover, this Court has held that the tort of bad faith does not exist in Missouri with re-

spect to first party claims by an insured against an insurance company. *Halford v. American Preferred Ins.*, 698 S.W.2d 40, 43 (Mo.App. E.D.1985). Accordingly, Appellant's "bad faith" argument fails as well.

Because Appellant fails to establish the element of lack of justification for his cause of action for intentional interference with a contract, Respondent is entitled to judgment as a matter of law. The second part of Appellant's point on appeal therefore need not be addressed.

The judgment of the trial court is affirmed.

CRANE, P.J. and ROBERT G. DOWD, Jr., J., concur.