# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2649
_____

Dale E. Wheatley; Stacy Franklin

*Plaintiffs - Appellants*

v.

JPMorgan Chase Bank, N.A.; U.S. Bank, N.A.; Select Portfolio Servicing, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: March 7, 2017
Filed: June 20, 2017
_____

Before RILEY,[1] Chief Judge, GRUENDER, Circuit Judge, and GRITZNER,[2] District Judge.
_____

RILEY, Chief Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

Dale Wheatley and his ex-wife Stacy Franklin sued several financial entities for foreclosing on the mortgage loan Wheatley took out on Franklin's house. The district court[3] held the foreclosure was justified and granted the defendants summary judgment. Wheatley appeals with respect to his claims under the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.020. Franklin appeals on her claims for tortious interference with contract. With appellate jurisdiction under 28 U.S.C. § 1291, we affirm the judgment.

## I.     BACKGROUND

In 2006, Franklin wanted to cash out her equity and refinance her house in Cosby, Missouri, but her credit was not good enough to qualify for a loan. Wheatley verbally agreed to help Franklin accomplish more or less the same result by taking out a mortgage himself and buying the house from her, on the understanding that Franklin would be responsible for paying off the loan and Wheatley would deed her the property when she did. In 2009, Franklin missed several payments and the loan went into default.[4]

After first agreeing to a repayment plan with the loan servicer, EMC Mortgage Corporation, Wheatley applied for a loan modification. EMC ultimately offered Wheatley a modification in May 2010. The modification agreement was conditioned upon Wheatley affirming the truth of several statements, including: "I am experiencing a financial hardship, and as a result, am either in default under the Loan Documents or a default is imminent." In an attached affidavit, Wheatley claimed he

---

[3]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

[4]This was actually the second default. The first default, about a year earlier, was resolved when Wheatley convinced the loan servicer to modify the loan by having Franklin's stepfather falsely claim to be leasing the house.

did not have enough cash on hand to afford his mortgage payments on top of his basic living expenses. Wheatley also noted he did not live in the house and paid rent and utilities elsewhere. And he repeatedly had told EMC representatives that Franklin made the mortgage payments, not him.

Wheatley signed the modification agreement and returned it to EMC. EMC also signed the agreement, but did not actually put the modification into effect. EMC had miscalculated Wheatley's unpaid balance—double-counting some interest that had been capitalized—so the repayment terms in the agreement did not match the (lower) amount Wheatley actually owed, which caused EMC's automated computer system to reject the modification. Thus, the changes to the loan were never processed, EMC's records showed the loan still being in default, and EMC continued sending Wheatley notices of default and foreclosure. Wheatley spoke with EMC representatives many times, but the issue was never resolved.

Starting in 2009, EMC's loan-servicing portfolio was acquired by JPMorgan Chase Bank, N.A. (Chase), which fully assumed servicing Wheatley's loan in May 2011. Chase representatives tried to work with Wheatley to resolve the apparent default, but by then he had become frustrated with his unsuccessful dealings with EMC and stopped responding. About two years later, Chase brought in Select Portfolio Servicing, Inc. (SPS), a sub-servicer, to handle Wheatley's loan. SPS briefly tried to work the issue out with Wheatley, but he was still not cooperating. Then, in August 2013, SPS held a foreclosure sale, where U.S. Bank, N.A., the successor trustee for the trust that owned Wheatley's loan (along with others), bought the house with a full-credit bid.

Wheatley and Franklin sued Chase in Missouri state court. After Chase removed the case, see 28 U.S.C. § 1441(a) (removal); id. § 1332(a)(1) (diversity jurisdiction), Wheatley and Franklin amended their pleadings to add claims against U.S. Bank and SPS. The operative complaint raised four counts, all by both plaintiffs

-3-

against all three defendants: wrongful foreclosure, breach of contract, tortious interference, and deceptive or unfair practices in violation of the MMPA. The district court granted summary judgment for the defendants on all four counts, but Wheatley and Franklin only appeal the last two, each separately taking one count.

## II. DISCUSSION

We review the grant of summary judgment de novo. See, e.g., Dupps v. Travelers Ins. Co., 80 F.3d 312, 313 (8th Cir. 1996). The interpretation and application of state law is also a legal issue we decide de novo. See id. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court held the defendants had the right to foreclose on the house, so Wheatley's MMPA claims failed as a matter of law because he could not prove his loss was caused by any misconduct of the defendants, as opposed to his own "noncompliance with the loan documents." The legality of the foreclosure was likewise fatal to Franklin's tortious-interference claims, according to the district court, because it meant Franklin could not establish the "absence of justification" that is a necessary element of such a claim, see, e.g., Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 372 (Mo. 1990). We agree as to both the foreclosure being justified and the consequences of that fact for the plaintiffs' claims.[5]

---

[5]We reject the defendants' suggestion that by not appealing the summary judgment on the wrongful-foreclosure count, Wheatley and Franklin abandoned any challenge to the legality of the foreclosure. The choice to let an adverse ruling stand on a particular claim while appealing others does not constitute a binding concession that the district court was right about every (or any) legal issue wrapped up in the unappealed holding. There is no rule that Wheatley and Franklin needed to appeal every theory of liability that might logically rest on a particular proposition—here, that the foreclosure was not justified—to be able to advance that proposition on appeal. Cases about treating a failure to raise an issue as a waiver or forfeiture, see, e.g., Sidebottom v. Delo, 46 F.3d 744, 750 (8th Cir. 1995), are beside the point, for the simple reason that Wheatley and Franklin do argue (clearly and at length) that the

-4-

The modification agreement explicitly provided it would only "amend and supplement" the existing loan documents "*[i]f* [Wheatley's] representations . . . continue[d] to be true in all material respects." (Emphasis added). By clear implication, if Wheatley's material representations were not true, the agreement did not "amend and supplement" anything, the existing version of the loan stayed in default, and foreclosure remained an authorized remedy. That is what happened here.

In the modification agreement, Wheatley affirmed: "I am experiencing a financial hardship, and as a result, am . . . in default under the Loan Documents." At its core, that statement was a representation about the reason for the default—that it was "a result" of a financial hardship *Wheatley* was suffering. And in that key (and material) respect it was untrue. The record, including Wheatley's deposition testimony, is clear that the missed payments and default were caused by Franklin's inability to pay, not Wheatley's.

Wheatley protests because EMC knew it was Franklin who made the payments on the house. Irrelevant. Nothing Wheatley might have told EMC about his arrangement with Franklin could have made it true when he said the default was the result of his own financial condition, or changed his clear statement into a representation about Franklin's financial condition. Nor does it make any difference whether, as Wheatley claims, he could not have afforded the mortgage himself, because there is no evidence Wheatley would have made the payments if he had the money.[6] By all indications, whether the debt was paid depended entirely on whether

foreclosure was not justified.

[6]For the first time in his reply brief, Wheatley faults the district court for reading his allegations about his own "financial hardship" as addressing whether he could have afforded the monthly mortgage payments. According to Wheatley, he actually meant he could not have afforded the (much larger) lump sum due on the defaulted loan. We find that explanation dubious and the point likely forfeited, but in any event the distinction is immaterial. There is no more evidence Wheatley would

-5-

Franklin paid it.  Because the amounts due apparently would have gone unpaid regardless of whether Wheatley could afford them, Wheatley's financial condition—whatever it was and whatever EMC knew about it—had no bearing on the truthfulness of his representation about the reason for the default.

Wheatley and Franklin make no argument that, even if Wheatley lied in the modification agreement, the foreclosure was still unlawful.  Thus we need not address the district court's other reason for upholding the foreclosure—that Wheatley's arrangement with Franklin violated the due on sale provision of his Deed of Trust.  Nor do we need to consider the defendants' arguments that there was not enough evidence of what exactly each of them did to incur liability on each count, because Wheatley and Franklin do not suggest any way their MMPA or tortious-interference claims could survive the foreclosure being legal.

## III.    CONCLUSION
Summary judgment for the defendants was proper.  Affirmed.

———————————————————

have paid off the lump sum if he had the money than he would have made the monthly payments.